Our final argument of the day is Davila v. Merrick B. Garland Ms. Varghese Good morning your honors. May it please the court, Christine Varghese for the petitioner. The issue here is whether petitioner's conviction for possession of stolen or converted motor vehicle in Illinois is a crime involving moral turpitude. Under the statute of conviction, we have knowing possession of a stolen motor vehicle joined at the hip with knowing possession of converted vehicle, making this offense indivisible. Ms. Varghese, can I ask you a question, an interesting argument, under Hasheesh, which was a theft case, we held that knowingly obtaining or exerting unauthorized control over the property of another is a crime of moral turpitude, I think that's what we held. What difference does it make if it's stolen or if it's converted? If what makes it a crime of moral turpitude is the knowingly obtaining or exerting control over property of the owner? Correct your honor, this court did hold in Hasheesh that receipt of stolen property under the Illinois theft offense is a CIMT, a crime involving moral turpitude. And the government points to this in their argument that what makes a receipt of stolen property offense turpitudinous is knowledge that the goods were stolen. And here, well I think that what we say in Hasheesh is what makes it a crime of moral turpitude is that knowledge is that you are exercising unauthorized control over property of the owner. Correct. Whether it was temporary or permanent, in other words whether it was converted or whether it was stolen. Your honor, the theft statute actually includes an element of permanent deprivation of property, which is an essential element of the offense. But that's right, but that's not what we discussed. That wasn't an issue at Hasheesh. I think Hasheesh, it was just A1, a person commits theft when he or she knowingly obtains or exerts unauthorized control over the property of the owner, and that's what we said makes it a crime of moral turpitude, having nothing to do with the permanency requirements in sections A, B, and C. Your honor, it actually requires... Maybe I'm just wrong about this, that's why I'm asking. I understand your argument regarding the temporary nature of the conversion or the permanent nature of the theft, but I'm just not sure what difference that makes in whether or not it's a crime of moral turpitude. So the board has been entrusted to define what is turpitudinous when it comes to taking of property, and they've drawn that line at there has to be an intent to permanently deprive. And that has been the definition for over 70 years until the board issued in 2016, matter of Diaz-Lizarraga. And under Diaz-Lizarraga, the board expanded the CIMT definition to include not only permanent takings of property, but where the ownership rights have been substantially eroded. Using that framework, the agency determined that Mr. Davila's conviction was categorically a CIMT. However, within the decision, it carves out an exception for short-term takings of property or de minimis takings of property. The agency ignores that petitioner's conviction does indeed criminalize overbroad conduct, including short-term takings of property, and ignores case law in Illinois completely in their decision that support that Illinois does criminalize de minimis takings of property under this conviction. Not only that- Well, like these are the cases where somebody takes the foster father's car and toots around for 15 or 20 minutes with it and brings it back, the kind of the joyriding cases. Correct. People v. Potsdell, Your Honor. That's correct. So the courts have sustained convictions under this section for short-term takings of a vehicle without any damage done to the vehicle, which would fall under the exception found in Diaz-Lizarraga. Despite that, the agency also committed error in impermissibly applying this board case retroactively to petitioner's case. Petitioner's offense predates the issuance of this board case, and this court has a presumption against retroactivity of the law as outlined in Velasquez-Garcia. The petitioner points out or discusses the five factors where it determines whether a law is impermissibly retroactive. Petitioner went through each of these five factors. The government had made no attempt to argue for and against the retroactivity of this extended conviction. Counsel, I will say I'm perplexed by this whole line of argument. The statute talking about crimes of moral turpitude long predates De Villa's conduct. So how is there a problem of retroactivity? Yes, Your Honor. So the precedent at the time of De Villa's conviction... Right, there are precedents, and of course precedents sometimes change. The Supreme Court held in Jim Beam that in civil litigation, a change in precedent applies retroactively, period. Now, is there some reason why Jim Beam doesn't control here? Your Honor, we believe Velasquez-Garcia does control. This court has laid out factors to be considered in the immigration context. Look, maybe you don't know Jim Beam, but this was for 20 years a hotly contested issue in the Supreme Court, and it finally got resolved in Jim Beam, which said that in civil litigation, adjudicatory decisions about older statutes always apply retroactively. Is there some technical reason why that doesn't apply in immigration law too? Am I missing something? Is immigration civil? Immigration is civil. If you have to divide the world between civil and criminal, but then there are cases like Padilla and other situations where maybe halfway. Your Honor poses a good question. However, this court in the past and other sister circuits have elected to use this balancing factor, this retroactivity. One of the problems, and it's a problem in the briefs in this case, is that nobody has mentioned the Supreme Court's retroactivity decisions. It's no surprise that when the parties don't alert a panel to the Supreme Court's case law, it may get overlooked. But here we are. Your Honor, this court, it's the petitioner's position that when a new application of law is manifestly unjust, as it is here, the court has laid out a framework for us to use in determining whether it's permissively retroactive. But your opponent doesn't really go down this path anyway. They seem to be trying to stay far away from Diaz-Lizarraga, which I would think you would like, basically. It makes me wonder how much of this actually got presented in the form. You make in your reply brief a Chenery argument, for example. How much of this was put before the board? The mens rea requirement, your Honor? Yeah, I mean, and the distinction between receiving stolen property on the one side and theft on the other side. We see all these things being discussed, but I didn't see that in the administrative opinions. The agency elected to treat this offense, and same with the immigration judge, as a taking of property offense and applied Diaz-Lizarraga in their decision. Your Honor, you are correct in stating that the government's arguments are based on Chenery violations. The agency had de novo review of the issue and elected to go down that route of arguing that Diaz-Lizarraga would apply in its case. So, your Honor, the government, if there are no further questions, I'll leave the rest of the time for rebuttal. Certainly, counsel. Ms. Nahas. Good morning, your Honors, and may it please the Court. I'm Rebecca Nahas for the United States Attorney General Merrick Garland. The Court should affirm the agency's conclusion that petitioner's possession of a stolen vehicle is a crime involving moral turpitude, which renders him ineligible for cancellation of removal. Are you relying, excuse me, Ms. Nahas, are you relying on a theft theory or a possession of stolen property theory? You spent a lot of time in your brief discussing the difference, but I didn't see that distinction being drawn before the agency. Yes, your Honor, the government believes that the receipt of stolen property, the generic definition for receipt of stolen property crimes, applies to this type of offense because it is a receipt of stolen property offense. But did you argue that to the Board of Immigration Appeals? Did you say, you know, well maybe theft offenses need to be handled prospectively after Diaz's decision, but these receipt of stolen property, where is that argument other than in your briefs here? Certainly, your Honor, the immigration judge found that the statute was a crime involving moral turpitude because it had this knowledge requirement, which it drew from Hashish. And Hashish, in a footnote, discussed a receipt of stolen property crime and found that it was a crime involving moral turpitude because it had this knowledge requirement. And so we're relying on the IJ's decision. The IJ also... Where the IJ says the weight of authority would indicate that matter of Diaz-Lizarraga should not be applied retroactively and then goes on and says, however, there's Hashish. Exactly. So we have that, your Honor. The immigration judge said we don't need Diaz-Lizarraga relying on Hashish and that predated petitioner's conviction. And the immigration judge also, earlier in the decision, notes the knowledge requirement as a reason why this crime is morally turpitudinous, consistent with Hashish. And that's at AR 48, your Honor. The court finds that respondent's statute of conviction requires a sufficiently coupled mental state possessing a vehicle knowing it to have been converted. So the immigration judge makes those findings that bring in the Hashish line of cases. And that's consistent with the agency's longstanding precedent for decades. It has held that receipt of stolen property crimes that involve this knowledge requirement are crimes involving moral turpitude. And that's also consistent with at least five other circuits other than this circuit and Hashish. All of those circuits have held that a receipt of stolen property crime, again, that has this knowledge requirement is a crime involving moral turpitude. And I'll also note that the board did cite Hashish as well as the knowledge requirement. Admittedly, the board's decision is a little confusing. The board seems to apply both generic definitions, but we think the board also affirmed the IJ's that Hashish would control because of the knowledge requirement. And I'd like to respond to Petitioner's claim that the Hashish receipt of stolen property statute had an intent to permanently deprive, and we should draw some meaning from that. Yes, the receipt of stolen property offense before the court did have that intent to permanently deprive, but the court didn't even cite it in its decision. And its analysis for why this crime is morally turpitudinous only turned on the fact that the crime required knowledge as to the stolen nature of the property. So Hashish does not stand for the proposition that a receipt of stolen property crime needs to have both knowledge and an intent to permanently deprive. And that really makes logical sense because there are different crimes with different elements and different features. The offender who receives the stolen property isn't always the person who sold the property. And so there's going to be different requirements that the board and this court have set depending on the category of crime before the court. Where do you get the conversion element? It's this paragraph right toward the end of the board's opinion where it's actually talking about Diaz-Lizarrago. But then there's little C. Hashish against Gonzalez, finding albeit in the context of a different Illinois statute for possession of stolen property, that receiving stolen property requires the same state of mind knowingly as other crimes of theft. So where's the conversion? Your Honor is asking whether the agency adjusts. You're actually, it seems to me, asking us to expand Hashish. Not just to apply it, but to expand it to a somewhat different statute, different factual situation. So I believe Your Honor is getting to the point that this statute has, in addition to stolen, it has converted. But the government's position is that that's irrelevant for the test for whether this crime is morally turpitudinous. The test is the offender's mental state in receiving that property that, at bottom, even converted property is a wrongful deprivation of property from the lawful owner. It may not be permanent, but it's still that wrongful deprivation. And that's why these crimes are morally turpitudinous. It doesn't turn them. But are you arguing then that every joyride is morally turpitudinous, as we say? Well, Your Honor, I believe that... Maybe you are. I mean, if that's your position, then that's your position. Well, we believe that the... After 15 minutes, the person takes the foster father's car and drives around and just comes back. That's converted. Didn't have permission to have it. Belonged to somebody else. Used it. You're right, Your Honor, that this statute does not require an intent to permanently deprive. And it covers these types of temporary takings. Isn't that, then, the minimum conduct necessary to violate the statute? Yes, Your Honor. And we believe that that difference is at play for receipt of stolen property crimes. Because, again, what makes this morally turpitudinous is the mental state. How do you know, though, that... Are you relying on something in the record of conviction? Are you arguing divisibility? No, Your Honor. I'm not arguing because the conviction record doesn't... The petitioner was charged with possession of stolen or converted property. So we wouldn't be able to prove it under the modified categorical approach. Our position is that converted and stolen are substantially the same for purposes of this separate generic definition. You said that in your brief. I'm not sure I'm persuaded by that. You sort of lump it all... Congress passed just a wildly redundant statute in your... Or the state of Illinois. Well, Your Honor, I think for purposes of comparing it to the generic definition, you know, Hasheesh has recognized this, five other circuits, and the board's longstanding precedent. What matters is the knowledge, the offender's mental state. And that's where the dishonesty... But knowledge of conversion. Let's apply the knowledge to the least terrible thing that's covered by this statute. Knowledge of conversion is enough, which is not what Hasheesh was about. Knowledge... Right. Hasheesh didn't discuss that. But I'll also point, Your Honor, to two circuit decisions. One is De Leon, which is a Tenth Circuit case, which found that an Oklahoma receiving stolen or converted... So it's very... It's similar to our statute. The Tenth Circuit found that that was a crime involving moral turpitude because the offender had to know that the property was either stolen or converted. And there wasn't this discussion about the different meanings of the terms because where the dishonesty is and where the morally reprehensible conduct comes from is the mental state of knowing that even this temporary taking was a wrongful deprivation of the lawful owner's property. I'll also note that the Eighth Circuit in Oca Roja found that a federal receiving stolen mail statute was a crime involving moral turpitude because it required knowledge that the property was either stolen, taken, embezzled, or abstracted. And again, the court didn't grapple with the different meanings of those terms because what mattered was the knowledge, the offender's culpable mental state. And, Your Honor, Judge Easterbrook, I just wanted to clarify that the government isn't relying on Diaz-Lizarraga. We don't believe that that line of cases applies in this context because this is a receipt of stolen property crime. And so, for that reason, we didn't really grapple with the retroactivity concerns because Hashish and the Board's precedent on receipt of stolen property crimes have been in place for decades, well before petitioner's conviction. And unless Your Honors have any other questions, the government requests that the court deny the petition for review or alternatively remand. Thank you, Your Honors. Thank you, Counsel. Anything further? Yes, Your Honors. If this court were to accept the government's argument that stolen property and converted property are the same, it would render words meaningless because the Board has already made that distinction that whether this court agrees with it or not, the line is drawn at whether there's an intent to permanently deprive. With stolen goods, there was an underlying theft that was involved. With converted property, there was no intent to permanently deprive the owner. And to touch upon the government's reliance on the Tenth Circuit case discussing stolen or converted property, there was no discussion of conversion or the difference between stolen property and conversion in that case. So it would not be analogous to the government's argument. So for these reasons, we ask the court to grant the petition for review. Thank you so much. Thank you, Counsel. The case is taken under advisement and the court will be in recess.